IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNION PACIFIC RAILROAD COMPANY,

          Plaintiff,

v.

WISCONSIN DEPARTMENT OF
REVENUE and RICHARD G. CHANDLER,
Secretary of Revenue,

          Defendants.

OPINION AND ORDER

17-cv-897-wmc

---

Plaintiff Union Pacific Railroad Company ("Union Pacific") filed suit against the Wisconsin Department of Revenue ("DOR") and its secretary, Richard Chandler, seeking injunctive and declaratory relief concerning adjustments to its 2014 and 2015 tax returns totaling $2,631,104.77 in principal and interest. At the end of February 2018, the parties stipulated to and this court entered an order preserving the status quo, directing defendants not to: (1) "collect the disputed taxes"; (2) "take any of the actions authorized for delinquent taxes" under Wisconsin law; or (3) "initiate any actions to record or enforce a lien upon any property of [plaintiff] for the disputed taxes." (Feb. 27, 2018 Order (dkt. #21) 1.) Before the court are the parties' cross-motions for summary judgment. (Dkt. ##24, 33.) For the reasons detailed below, plaintiff's motion is granted and defendant's is denied.

UNDISPUTED FACTS[1]

A. Background

Chapter 70 of the Wisconsin Statutes contains the state's general property tax statutes, including those governing industrial and commercial taxpayers. Taxes authorized by Chapter 70 are based on property assessments performed by local assessors, except for manufacturing properties which are assessed by DOR. The Wisconsin Legislative Fiscal Bureau ("LFB"), a nonpartisan entity that provides fiscal and program information and analysis to the Wisconsin Legislature, issued Informational Paper 13 in January 2017 about Wisconsin's Property Tax Level.

As set forth in the chart below, the total property tax levy for 2015 in Wisconsin was $9.4 billion, of which $2.6 billion was against industrial and commercial properties. Of that latter amount, roughly 10% was for personal property.

| Type of Taxpayer | Total Property Tax Levied | Tax Levied on Personal Property |
| --- | --- | --- |
| Commercial Property Owners | $2.2 billion | $197 million |
| Manufacturers | $363 million | $65 million |
| Total: | $2.6 billion | $262 million |

In contrast, as defined in Wis. Stat. § 70.11(39), "intangible personal property" is exempt from the state's general property taxation provisions. Since the 1999-2000 Wisconsin Legislative session, one recognized type of exempt, intangible personal property

---

[1] The following facts are material and undisputed for purposes of summary judgment, except where noted below.

has been "custom computer software," which refers to software that was internally developed, owned, and operated by the taxpayer. The Wisconsin Legislative Fiscal Bureau opines that "[c]ustom software is exempt as an intangible under s. 70.112(1) of the statutes." (LFB Paper #1043 (dkt. #30-3) 1.) Union Pacific agrees that LFB Paper #1043 includes that statement, but notes that the statement is only "the author's non-authoritative interpretation of the law." (Pl.'s Resp. to Defs.' PFOF (dkt. #38) ¶ 3.)

**B. DOR's Audit of Union Pacific**

Union Pacific is a Delaware corporation with its principal place of business in Omaha, Nebraska. As a common carrier engaged in interstate commerce by rail, Union Pacific operates in Wisconsin, among numerous other states. Under Subchapter I of Chapter 76 of the Wisconsin Statutes, the DOR is authorized to assess railroad property and collect property taxes. The following chart sets forth the amounts of annual property taxes levied against all railroads in Wisconsin from 2012 to 2017:

| Year | Levy |
|------|------|
| 2012 | $28,390,765.12 |
| 2013 | $31,318,995.78 |
| 2014 | $33,903,738.10 |
| 2015 | $36,782,519.23 |
| 2016 | $41,731,761.65 |
| 2017 | $43,602,821.87 |

Subchapter I also provides for the assessment and taxation of other "utilities," including

"all conservation and regulation companies," "all air carriers," and "all pipeline companies." Wis. Stat. § 76.01.

Since at least the 2006 tax year, Union Pacific has reported its custom computer software as exempt property in its filings with DOR. Union Pacific also provided DOR with a copy of a fair market appraisal of its custom computer software. That appraisal was performed by Robert Reilly, an expert in valuing intangible assets, who assigned a total value of Union Pacific's custom software at just over $5 billion for 2014 and at $6.2 billion for 2015.

In 2016 and 2017, DOR conducted its own audit of Union Pacific's property tax assessment for tax years 2014 and 2015. Following that audit, DOR issued an "Omitted Property Assessment Notice" on September 6, 2017, asserting that Union Pacific owed an additional $2,631,104.77 in taxes and interest for the combined years 2014 and 2015, based on an adjustment required to "add back property incorrectly claimed as exempt." (2017 Omitted Property Assessment Not. (dkt. #27-1) 1-2.) The Notice further demanded payment by September 15, 2017.

In particular, the Notice explained that: (1) "[a]n adjustment was made to correct the reporting of custom software excluded . . . by including the amount of custom software in the 'System Total -- Equipment' section of the Road & Equipment schedule of the Railroad Annual Report"; and (2) "the custom software claimed as exemption . . . was determined to not qualify," so that it needed to be "added back to Wisconsin value." (*Id.* at 2.) The parties agree that DOR's disallowance of Union Pacific's custom software exemption alone resulted in $802,097.44 and $1,162,904.95 in additional taxes for 2014

4

and 2015, respectively, plus interest.

While the parties dispute whether Union Pacific included its custom computer software in its "total value in the first instance" (Pl.'s Resp. to Defs.' PFOF (dkt. #38) ¶ 16), there is no dispute that the DOR's adjustments added $37,898,985 and $57,961,406 in property value for tax years 2014 and 2015, respectively, using a different valuation method than Reilly. In the end, Union Pacific opted not to pay the tax, and filed suit instead, originally suing DOR in Dane County Circuit Court on October 5, 2017, challenging the Omitted Property Assessment on state law grounds. Union Pacific then filed this federal suit on November 27, 2017. The state court stayed its proceedings pending resolution of this lawsuit.

## OPINION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the parties have cross-moved for summary judgment, agreeing that there are no material facts in dispute while asserting that the law is on their side. (Pl.'s Mot. Summ. J. (dkt. #24) 1-2; Defs.' Mot. Summ. J. (dkt. #33) 1.) Specifically, plaintiff argues that Wisconsin discriminates against it as a railroad in violation of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4-R Act") by taxing its custom computer software while generally declining to tax similar, intangible property owned by commercial and industrial taxpayers. On the other hand, defendants contend that Union Pacific is effectively challenging dissimilar and permissible tax exemptions granted by the State of Wisconsin to non-railroad taxpayers.

5

The 4-R Act prevents states from imposing on railroads: (1) greater tax rates or assessment ratios than on "other commercial and industrial property," and (2) other "discriminat[ing]" taxes against railroads. *See* 49 U.S.C. § 11503(b).[2] The Supreme Court held in *Dep't of Revenue of Ore. v. ACF Indus., Inc.*, 510 U.S. 332 (1994), that "a State may grant exemptions from a generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge under [§ 11503(b)(4)]." *Id*. at 335; *see also CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 1101, 1106 (2011) (hereinafter "*CSX Transp. I*") (noting that in *ACF Industries*, the Court "held that a railroad could not invoke § 11501(b)(4) to challenge a generally applicable property tax on the basis that certain non-railroad property was exempt from the tax").

In *CSX Transp. I*, the Court also summarized the issue considered in *ACF Industries* as "whether a railroad could sue a State under subsection (b)(4) for taxing railroad property while exempting certain other commercial property," holding "that the railroad could not do so." 562 U.S. at 1110; *see also id.* at 1111 ("Subsection (b)(4)'s prohibition on discrimination likewise could not encompass property tax exemptions."); *id.* at 1112 ("The 4–R Act distinguishes between property taxes and other taxes. Congress expressed its intent to insulate property tax exemptions from challenge; against that background, *ACF Industries* stated that permitting such suits would intrude on the States' rightful authority. By contrast, Congress drafted § 11501 to enable railroads to contest all other tax exemptions; and when Congress speaks in such preemptive terms, its decision must

---

[2] "Commercial and industrial property" is defined as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy." 49 U.S.C § 11501(a)(4).

6

govern.").

However, the Supreme Court also noted the possibility in *ACF Industries* that if the state specifically targeted the railroads for a tax not of general applicability, (b)(4) might be violated. *See CSX Transp., Inc. v. S.C. Dep't of Revenue*, 851 F.3d 320, 331 (4th Cir. 2017) (rejecting argument that *CSX Transp. I* meant that a railroad could not challenge property taxes under (b)(4)).[3] Accordingly, the Supreme Court recognized that if

> the railroads -- either alone or as part of some isolated and targeted group -- [were] the only commercial entities subject to an ad valorem property tax[,] . . . it might be incorrect to say that the State 'exempted' the nontaxed property. Rather, one could say that the State had singled out railroad property for discriminatory treatment.

*ACF Indus.*, 510 U.S. at 346-47 (citing *Burlington N. R.R. Co. v. City of Superior, Wis.*, 932 F.2d 1185 (7th Cir. 1991); J. Hellerstein & W. Hellerstein, State and Local Taxation 973 (5th ed. 1988)). Moreover, while the Court did not definitively resolve the reach of subsection (b)(4) because Oregon's challenged tax did not improperly single out railroad property, *id.* at 347, multiple federal courts have concluded that specific targeting of railroad property for discriminatory taxation would violate the 4-R Act.

For example, just a year later, the District of North Dakota concluded the Supreme Court had "clearly state[d] that the *ACF Industries* holding does not apply when a State targets railroads for taxation under the pretext of broad exemptions[,] . . . strongly suggest[ing] that such targeted taxation would violate the 4-R Act." *Ogilvie v. State Bd. of*

---

[3] On remand, the District of South Carolina ultimately concluded that the state had discriminated against the railroad, but that the discrimination was justified because of favorable legal and practical exemptions afforded to railroads. *CSX Transp., Inc. v. S.C. Dep't of Revenue*, No. 3:14-cv-03821-MBS, 2019 WL 117313 (D.S.C. Jan. 7, 2019).

7

*Equalization of State of N.D.*, 893 F. Supp. 882, 886 (D.N.D. 1995); *see also Kansas City S. Ry. Co. v. Koeller*, 653 F.3d 496, 510 (7th Cir. 2011) (recognizing this same suggestion). In *Ogilvie*, the court went on to note that the Supreme Court's use of "generally applicable" would "add nothing to [its *ACF Industries* holding] unless they form the basis of an exception." 893 F. Supp. at 886 (finding that North Dakota's tax system fell outside the *ACF Industries* holding because it exempted *all* personal property, except for *some* personal property owned by "centrally assessed" businesses -- a short list including railroads).[4]

Where a tax is not one of general applicability, *ACF* is "inapposite." *See, e.g., Burlington N. R.R. Co. v. Bair*, 60 F.3d 410, 413 (8th Cir. 1995) (holding that "subsection (b)(4) does apply to prohibit Iowa from taxing the intangible personal property of railroads since Iowa imposes this tax upon only a small targeted group of businesses"), *cert. denied* 516 U.S. 1113 (1996).[5] In *Bair*, the Eighth Circuit concluded that "[p]ractically speaking, if a state exempts sufficient property from a particular property tax, the tax no longer can be said to be one of general application." *Id.* Otherwise, "the anti-discrimination purpose of the 4-R Act could utterly be eviscerated by a state that ostensibly imposed a tax of general applicability but then systematically exempted all but a targeted few taxpayers." *Id.*

The Tenth Circuit agrees:

> Given the Supreme Court's qualifying language in *ACF* that

---

[4] The District of North Dakota was actually reaffirming its pre-*ACF Industries* order, adding that "*ACF Industries* continues to support the injunctions of this court." 893 F. Supp. at 886.

[5] The Eighth Circuit explained that "failure to tax non-railroad personal property is [not] the equivalent of granting an exemption" because the challenged tax "scheme does not even impose a generally applicable tax on personal property." *Bair*, 60 F.3d at 412-13.

8

> state tax "exemptions" denied to an "isolated and targeted group," might violate § 306(1)(d), we reject Defendant's assertion that no "property tax exemption," regardless of its nature or effect, is subject to challenge under § 306. Otherwise, states could circumvent § 306 simply by enacting a tax of "general application," and then "exempting" from the tax all but a certain class of taxpayers, which, as the Court noted in *ACF*, is really not an "exemption" at all, but a singling out of certain taxpayers for discriminatory treatment.

*Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1417 (10th Cir. 1996) (quoting *ACF Indus.*, 510 U.S. at 346) (holding that challenged property tax singled out plaintiff-railroad "as part of an 'isolated and targeted group' for discriminatory tax treatment in violation of § 306(1)(d) of the 4-R Act, as interpreted by the Supreme Court in *ACF*"), *abrogated in part on other grounds by Alabama Dep't of Rev. v. CSX Transp., Inc.*, -- U.S. --, 135 S. Ct. 1136, 1141 (2015) [hereinafter "*CSX Transp. II*"].[6]  Further support is also found in the Seventh Circuit's *City of Superior* opinion, which as noted above, the Supreme Court cited favorably in *ACF Industries*.  In *City of Superior*, the Seventh Circuit considered a Wisconsin tax on the three "iron ore concentrates docks," which were all owned or operated by railroads, concluding that the state could *only* "tax[ ] railroads as members of larger taxpayer groups" because "it cannot levy a tax on inputs into railroading alone."  932 F.2d at 1186, 1188.

Most recently, after considering *ACF Industries*, *Bair*, *Huddleston*, and *Ogilvie*, the District of Oregon enjoined the state "from taxing the intangible personal property of

---

[6] However, the dissent in *Huddleston* was unconvinced that railroads were "isolated and targeted" when included in a "public utilities" group, since that group broadly included any railroad, airline, electric, telephone, telegraph, gas, gas pipeline carrier, domestic water (except nonprofit domestics), pipeline, coal slurry pipeline, or private car line company.  94 F.3d at 1418-20.  Here, the "isolated and targeted group" is arguably more limited because it reaches only railroads, air carriers, pipeline companies and "conservation and regulation companies."  Wis. Stat. § 76.01.

9

railroads" because: (1) there was no "generally applicable" tax on intangible property, as the only intangible personal property taxed was that of centrally assessed taxpayers; (2) the situation matched that reserved in *ACF Industries*; and (3) the tax scheme discriminated -- without justification -- against railroads. *BNSF Ry. Co. v. Ore. Dep't. of Revenue*, No. 3:17-cv-1716-JE, 2018 WL 6585279, at *6-*7, *11 (D. Ore. Dec. 14, 2018). That court addressed at length whether the situation identified in *ACF Industries* was still valid, concluding that it was. *Id.* at *6-*9.

Here, Chapter 70 of the Wisconsin Statutes addresses general property taxes, providing that taxes are levied "upon all general property in this state except property that is exempt from taxation." Wis. Stat. § 70.01. "General property," in turn, "is all the taxable real and personal property defined in ss. 70.03 [real property] and 70.04 [personal property], except that which is taxed under ss. 70.37 to 70.395 and ch. 76 . . . ." Wis. Stat. § 70.02. Personal property is defined to include "[a]ll goods, wares, merchandise, chattels, and effects, of any nature or description, having any real or marketable value, and not included in the term 'real property.'" Wis. Stat. § 70.04(1g). Exemptions are listed in Wis. Stat. §§ 70.11, 70.111, 70.112, including an exemption for "[m]oney and all intangible personal property." Wis. Stat. § 70.112(1).

The Wisconsin Supreme Court has further held that: "'[A]ll intangible personal property' is an exceptionally broad classification. Its plain language suggests a clear policy choice to exempt 'intangible personal property' from personal taxation." *Adams Outdoor Advertising, Ltd. v. City of Madison*, 2006 WI 104, ¶ 67, 294 Wis. 2d 441, 473, 294 N.W.2d 803, 819. Likewise, the Wisconsin Supreme Court interpreted § 70.04 as only including

10

tangible personal property, with one exception not relevant here. *Id.* at ¶¶ 62-63. Because "all real and personal property" is to be assessed, § 70.10, there is no dispute that Chapter 70 also covers commercial and industrial taxpayers. (Defs.' Resp. to Pl.'s PFOF (dkt. #32) ¶ 14.)

In contrast, in response to questions posed by the court following summary judgment briefing, defendants acknowledged that "manufacturers do not pay property tax on intangible personal property." (Defs.' Resp. to Order (dkt. #49) 4.) On the other hand, DOR is separately charged with assessing "the property of all railroad companies, of all conservation and regulation companies, of all air carriers, and of all pipeline companies" and collecting their taxes. Wis. Stat. § 76.01.[7] Included in the taxable property are "all real and personal property of the company used or employed in the operation of its business, excluding property that is exempt from the property tax under s. 70.11(39) . . . ." Wis. Stat. § 76.025(1). While § 70.11(39) exempts "computers," "custom software" is not exempted.[8] Even so, the parties seem to agree that the Wisconsin Legislature did not intend to tax custom computer software more broadly. (*See* Pl.'s Opening Br. (dkt. #24) 18 n.5; Defs.' Opp'n (dkt. #29) 4-5; Defs.' Resp. to Order (dkt. #49) 4 ("manufacturers do not pay property tax on . . . custom software").)

Regardless, Chapter 76 provides that "both real and personal [property], including all rights, franchises and privileges used in and necessary to the prosecution of the business

---

[7] Even certain air carriers are not actually assessed under Chapter 76. *See* Wis. Stat. § 76.025(2).

[8] Defendants represent that "no property taxes are applied to non-custom software for any type of taxpayer." (Defs.' Resp. to Order (dkt. #49) 2.)

of any company enumerated in s. 76.02 shall be deemed personal property for the purposes of taxation, and shall be valued and assessed together as a unit." Wis. Stat. § 76.03(1). Unlike Chapter 70, however, Chapter 76 does not exclude "all intangible personal property." As such, it appears that the only entities in Wisconsin who are taxed for their intangible personal property -- including custom computer software -- are the limited group of entities specifically assessed by DOR under Subchapter I of Chapter 76, including railroads. Accordingly, the tax on that group is *not* one of general applicability, but rather is one that appears to fall squarely, if not entirely, on railroads "as part of some isolated and targeted group." *ACF Indus.*, 510 U.S. at 346; *cf. Huddleston*, 94 F.3d at 1417 ("Unlike the tax exemption at issue in *ACF*, Colorado's intangible property tax exemption applies to *all* commercial and industrial taxpayers other than 'public utilities,'" thereby "singl[ing] out Plaintiff as part of an 'isolated and targeted group' for discriminatory tax treatment").

Similarly, the Seventh Circuit held that "railroads can only succeed [under *ACF Industries*] by showing that the actual tax levied is a general tax in name only and is in fact a tax on railroads," making "the percentage of the total tax levy that falls on railroads" the relevant number because "exempt property is not part of the comparison class." *Burlington N. R.R. Co. v. Wis. Dep't of Revenue*, 59 F.3d 55, 58 (7th Cir. 1995). Accordingly, the Seventh Circuit explained that "one would presumably have to look at the percentage of the total tax levy falling on the targeted group in determining whether the tax was one of

general application." *Id.* at 58 n.2.[9] On the facts before it, the Seventh Circuit went on to hold that the railroads were not specifically singled out because "the tax levy on railroad property was less than .3% of the total property tax levy; less than 1% of the property tax levy on other commercial and industrial property; and less than 5% of the levy on other commercial and industrial personal property." *Id.* at 58.

While the plaintiff-railroads in *Burlington Northern* challenged a long list of *exemptions*, here, the challenged tax on intangible personal property falls only on "public utilities" assessed under Subchapter I of Chapter 76, and the *entire* amount -- 100% -- of the taxes levied against this specific intangible property is paid by those same entities. (*See* Defs.' Resp. to Order (dkt. #49) 2 ("manufacturers do not pay property tax on intangible personal property, custom software or prewritten software").)

While the appropriate consideration for the court would appear to be the proportion of the challenged tax borne by the targeted group -- not the proportion of the state's *entire* property tax collection borne by that group -- defendants represent that they are unable to apportion what part of the total assessment is "directly attributable to custom software," or even intangible or tangible personal property. (McClelland Decl. (dkt. #50) ¶ 7.) Indeed, as to railroads, DOR does not have records detailing the taxes levied on real versus tangible or intangible personal property, much less custom software alone. (Defs.' Resp. to Order (dkt. #49) 2.) Accordingly, the court is unable to determine precisely how much

---

[9] The Seventh Circuit declined to opine about the correctness of *Ogilvie*, choosing instead to find it "clearly distinguishable" because the challenged Wisconsin tax was "a universal tax which exempts certain classes of property," with the exemptions being independent of whether the owning business was "locally or centrally assessed." 59 F.3d at 57 n.1; *id.* at 57 (noting that statute imposed tax "upon all general property in this state except property that is exempt").

13

of the taxes levied against § 76.01 companies is attributable to the value of intangible personal property generally, or to custom software specifically. Instead, the court only has the total taxes levied against railroad and other § 76.01 companies per year:

| Year | Number of Railroads Taxed under § 76.01 | Amount Levied against Railroads under § 76.01 | Number of Non-railroad Companies Taxed under § 76.01[10] | Amount Levied against all Companies under § 76.01[11] | Percentage of § 76.01 Taxes Levied against Railroads[12] |
|---|---|---|---|---|---|
| 2008 | 11 | $20,741,702 | 41 | $38,501,850 | 54% |
| 2009 | 12 | $22,963,694 | 39 | $47,402,183 | 48% |
| 2010 | 12 | $24,515,056 | 38 | $54,413,562 | 45% |
| 2011 | 12 | $26,887,827 | 38 | $63,220,235 | 43% |
| 2012 | 10 | $28,390,765 | 34 | $63,900,911 | 44% |
| 2013 | 10 | $31,318,996 | 31 | $70,902,582 | 44% |
| 2014 | 10 | $33,903,738 | 32 | $74,599,100 | 45% |
| 2015 | 10 | $36,782,519 | 31 | $78,767,828 | 47% |
| 2016 | 10 | $43,991,610 | 31 | $89,249,784 | 49% |
| 2017 | 10 | $41,637,819 | 32 | $93,655,217 | 44% |
| 2018 | 10 | $42,581,886 | 31 | $93,926,686 | 45% |

If the total property taxes levied are any indication, railroads roughly shoulder between 40 and 55% of the taxes on custom software. This disproportionate tax burden is very different from the relatively slight tax burdens borne by the railroads in *Burlington Northern*. *Cf.* 59 F.3d at 58 (explaining railroads' tax levy comprised "less than .3% of the total property tax levy; less than 1% of the property tax levy on other commercial and

---

[10] These numbers include the conservation and regulatory companies, air carriers, and pipeline companies taxed under § 76.01. (McClelland Decl. (dkt. #46) 3-4.)

[11] These amounts include the levies against railroads. (*Id.* at 2.)

[12] These percentages are calculated by dividing the amount levied against railroads by the amount of taxes levied against all Companies under § 76.01.

industrial property; and less than 5% of the levy on other commercial and industrial personal property").

Moreover, defendants provide no justification for singling out the custom computer software of railroads, airlines and public utilities alone for taxation, leaving the court to conclude that this disproportionate tax burden on that narrow class of taxpayers is a violation of § 11501(b)(4). Accordingly, Union Pacific has established a violation of the 4-R Act because railroads, as part of a small group of companies, are taxed on their custom computer software, unlike other industrial or manufacturing taxpayers.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for summary judgment (dkt. #24) is GRANTED.

2) Defendants' motion for summary judgment (dkt. #33) is DENIED.

3) Defendants are enjoined from assessing or collecting a tax on Union Pacific's custom computer software under Chapter 76 of the Wisconsin Statutes. The parties may have fourteen (14) days to meet and confer on the appropriate form of a permanent injunction, at which point they are to jointly submit a proposed injunction. Failing that they are to submit separate proposals, along with a brief explanation as to why their proposal is preferable.

Entered this 5th day of March, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge